Welcome to the last day of our panel sitting here in Atlanta. Judge Newsom and I are very happy and very grateful to have with us Judge Charlene Honeywell from the Middle District of Florida. She is a graduate of the University of Florida School of Law. She's been on the district court since 2009. Is that right? In 2009, she resides in Tampa. She's been with us before, and we're glad that she's here again to help us with our cases. You're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, then just keep going. You'll be on our time and not yours. All right, we have four cases today. The first one is number 24-10041, United States v. Krystal Pinkins. Mr. Lloyd, before you begin, Mr. Lloyd, we know that you're court-appointed for Ms. Pinkins, and on behalf of her and the court, I want to thank you for your service. We really do appreciate it. Thank you, Your Honor. May it please the court, J.D. Lloyd for Krystal Pinkins. I'd like to spend my time today explaining why Ms. Pinkins is due judgments of acquittal for all counts of this prosecution. Simply put, the United States case required the jury to speculate too much. This court should find that the United States evidence wasn't sufficient for a rational jury to conclude that Ms. Pinkins aided and abetted Yasmeen Haider in the crimes that Haider committed that day. And Ms. Pinkins recognizes that this is a nuanced request in the vein of a sufficiency challenge. This isn't the type of challenge where an appellant can point out that this evidence is completely missing, or evidence that the jury could find beyond a reasonable doubt is completely missing. That we're in that gray area of where circumstantial cases can present evidence that really bring up the question of whether inferences that the jury makes from that evidence is reasonable enough for this court to conclude that the government has made a prima facie case. But in the wake of... Well, there was, but let's talk about some of the facts that, forget inferences, let's talk about some of the facts that I think the jury could have found based on the evidence presented. The jury could have found that Ms. Pinkins and Ms. Haider agreed to a scheme in which they would try to stop people with cars and take their cars, right? That is certainly an inference that was... Not an inference. That's what Ms. Haider testified to, did she not? She did, Your Honor, and yes, that is certainly Haider's testimony that... Right, which the jury could have credited. Yes, Your Honor. Yes, Your Honor. Then the jury could have also credited her testimony that it was Ms. Pinkins who gave her the gun to use in that scheme to take somebody else's vehicle, right? Yes, Your Honor. It was unequivocal that the gun in question was Pinkins' gun and that at some point, probably on the Friday beforehand, was given to Haider by Pinkins. Okay. And we know from Ms. Haider that there were a couple of times that Haider began to try the ruse to take someone else's car, but stopped either because she couldn't go through it or she was afraid or the circumstances weren't right or whatever, and she told Ms. Pinkins about this, right? Yes, Your Honor. Yes, Your Honor. Okay, and the last thing I think that's direct evidence, not circumstantial, and then you talk about inferences, is that at the time of the shooting here, Ms. Pinkins was in a shooting, right? That is correct, Your Honor. That is correct. Okay, so now tell me, those are, that's direct evidence. So now tell me why the jury could not have fairly found that the elements of aiding and abetting were satisfied for felony murder. Well, while this Court could very well conclude that this is direct evidence, Ms. Pinkins is asking this Court to consider it more in the vein of circumstantial evidence, or that this is more of a circumstantial case because of the way that the evidence, and the evidence presented to the jury, created different stories, and of course, I'm not trying to get into a weight argument. I'm not trying to say that the jury weighed it wrong, but in the evidence itself speaks to a viable alternate explanation. Pinkins stated— I guess I just, I don't think I quite understand, like on a sufficiency challenge, if you're saying, hey, there are two stories here, the jury chose one. I don't really understand how, given the standard of review, you can possibly prevail on that kind of argument. Well, under, going all the way back to Jackson v. Virginia and the way that this Court has cited Cosby and then recently in, I believe it was U.S. v. Lewis, talking about that when there is a circumstantial case, and when equal or nearly equal circumstantial evidence supports a theory of guilt and a theory of innocence, then the jury must necessarily entertain a reasonable doubt. Back to, all the way back to Jackson, it's not a standard of if the government presents any evidence that the defendant loses, or even if it's just a tie, the government wins and the defendant loses. And we, coming back to that standard, but then looking at the evidence here, let's start with the last thing you referenced, Judge Jordan, talking about where Pinkins was on the day in question. Mere presence alone isn't enough to support an aiding and abetting conviction. It isn't support, it isn't enough to make a prima facie case of aiding and abetting, and records not exactly— I completely agree with you. So if the government's only evidence was that Ms. Pinkins was somewhere near the scene of the shooting, with nothing else, they hadn't discussed the scheme to take somebody else's car, Ms. Pinkins hadn't given Ms. Hyder the gun, if all of that was missing and all you had was her somewhere nearby, I think I would agree with you, despite a jury verdict, that you have a pretty good argument for acquittal. But that's not the sum and substance of the record here. It isn't, Your Honor, but again, we're kind of coming back to the bigger picture, in terms of, with Hyder's statements. Hyder's statements about, Crystal knew what we were doing, this was the plan to commit a carjacking or a robbery, this was what was going to happen. This court, sitting as the Fifth Circuit, and Tillery observed that a co-defendant's testimony has to be viewed with skepticism. This court doesn't require corroboration of a co-defendant's allegations. On a legal sufficiency challenge, though, aren't we required to credit Hyder's testimony about what she and Pinkins discussed, and not make those credibility determinations? I mean, that's for the jury, and that's already been made. Well, Your Honor, we do have to make reasonable inference, or reasonable credibility to the But Hyder's statements themselves aren't corroborated by the evidence, in our opinion, in our view, that all the other evidence that would be necessary to go with Hyder's statements still raise this doubt about what Pinkins' intentions were. I mean, her own statement to law enforcement, which, of course, we would conceive could be conceived as self-serving, but it raised this question as to what Pinkins truly wanted to have happen, or was intending to have happen. And this, her statement was that she kept telling Hyder that she wanted nothing to do with this, and that she didn't want, she had a son to think about, that she was not going to be involved with anything violent. But that's why we believe that Hyder's testimony Well, it's one thing to say you don't want to be involved in the actual taking of the car by force. It's another thing to say you don't want to be involved, but you give the other person the gun by which to commit carjacking or robbery. And that's where Ms. Pinkins comes back to the idea that we think this court should be careful in the wake of Rosemond in looking at what Pinkins did and whether or not this rises to the level of someone that's truly aiding and abetting in this offense. And again, we kind of come back to the jury had to at least consider what Pinkins' statements were, and then as well as her actions. Again, she didn't do anything during the course of the robbery. She didn't do anything in the hour leading up to the robbery unfolding. She didn't do anything in the aftermath of the robbery, which, you know, in Steiner, this court looked at the appellant's post-defense actions to help find intent for, you know, as required under Rosemond. But there's nothing that Crystal Pinkins did after the robbery unfolded when she arrived on the scene that the jury could reasonably say, well, that certainly showed that she was aiding and abetting. And this is where we, again, kind of come back to... But the government wasn't trying... She wasn't charged with aiding and abetting first-degree premeditated murder, but I think you may have a stronger argument if that was the charge, because maybe it is too far of an inference to think that Ms. Pinkins and Ms. Hyder had agreed beforehand to kill somebody. But the gun was provided, carjacking is oftentimes exerted by force, the gun was the means of that force, and somebody was killed in the course of that carjacking. That's why it was felony murder, but not first-degree premeditated murder. Of course, Your Honor, but again, Crystal, as soon as she arrived on scene, she didn't see the keys thrown on the ground and immediately take the car and go, or go get her son and take the car and go. So we think that her post-robbery actions are very indicative of what her intent throughout all of this was, and the jury necessarily had to have made inferences based off of what Hyder testified to about what Pinkins' actions were, because they don't... We believe that they don't necessarily speak for themselves in a way that this Court could conclude that they made a sufficient case under a Nadine and Abedek theory. All right. Thank you. Thank you very much. Okay. Mr. Cross? Good morning. I'm Jonathan Cross on behalf of the government, and may it please the Court, Pinkins is not entitled to an acquittal for any of her convictions for robbing Adam Simjian and Michaela Paulus and then killing Adam Simjian with Pinkins' gun. Your Honor, as you all well know, and as you've already indicated with the questions, the direct evidence in this case is insurmountable. The direct evidence in this case is that for two weeks, Hyder and Pinkins were discussing a carjacking. Two days before the carjacking that took place in this case, Pinkins gave Hyder a loaded gun, a gun that Pinkins had taught Hyder to use. On the day of the killing, or prior to the day of the killing, four times, she gave her the gun on Friday. On Saturday, four times, Hyder went down to the road where the carjacking was going to take place and didn't have the guts to carjack anyone. The fourth time that day, she asked Pinkins to accompany her to give her support and encouragement because she didn't have the guts to do it. And even then, Hyder was not able to perform the carjacking. And then it was the next morning, on August the 14th, that Hyder asked Pinkins again to accompany her with a loaded gun in a backpack and they walked down over a half mile away from the campground and left behind Pinkins' five-year-old son, which is very important because the alternative theory that Pinkins tried to present through her statement that was admitted was that the only reason she went down with Hyder was in order to get some help from someone, for someone to give them a ride. And if you're going to get help, why do you leave behind your five-year-old son for well over an hour because that's how long the carjacking took place. And then after the carjacking took place, and granted, there is no evidence that Pinkins or Hyder ever intended for anyone to die, but that's what happens when you commit a carjacking or a robbery, and that's what happened in this case because the victim pulled out his gun and there was a standoff. Immediately after the shooting took place, Pinkins came out from the woods and Hyder was screaming for help and Pinkins fled. This was her friend, that she was just going to help, to get some help for them, not to carjack according to Pinkins, and she fled the scene a half mile away again. This evidence we would submit is more than enough to prove sufficiency for an aiding and abetting theory. Aiding and abetting, as Roseman sets out and the Supreme Court stated, comprehends all assistance of words, acts, support, encouragement, and presence. Every one of those boxes are checked in this case. Can you pivot for a second to the question of whether or not the aiding and abetting the robbery conviction is barred by double jeopardy as a lesser included offense? Certainly. To begin with, we feel like the Pinkins has failed to show plain error in this case. Number one in setting out what the legislative intent was for our 2111 and 1111 convictions. Additional to that, and so important, is that two victims are involved. We had two victims under count three, the robbery count, and the felony murder was predicated in the indictment upon kidnapping or robbery. In this case, they acquitted on kidnapping but found Pinkins guilty of the robbery that involved two victims, which are two crimes. The indictment may be duplicitous, but it does not violate double jeopardy. But did the verdict form separate out the counts or the victims with regard to this case? No, Your Honor. Pinkins did not ask for a special verdict form. So what's the basis for that argument? I noticed that argument was made in your brief in response to the double jeopardy argument. But the verdict form, nor the indictment, nor the jury instructions followed that theory, did they? You are correct. It does not separate them out. And granted, that's a problem, but it's not plain error. But isn't it black letter law that double jeopardy would prohibit a conviction for both the felony murder and the underlying felony offense? I would submit in this circuit and the Supreme Court has not ruled squarely on that issue of 1111 and 2111. All of the other cases involved, the case that is relied upon principally by the defense, the Oklahoma case, that was a state statute. There's also a Tenth Circuit case, the Challin case, where they found that 1111 consumes or 2111 is a lesser included of 1111. So is it your contention that our plain error precedent requires us to have actually engaged these two specific statutes and concluded that they create a double jeopardy bar? I would submit for there to be plain error. That would be correct. We have to have had an 1111, 2111 case as opposed to more generically, you know, sort of a robbery, felony murder case. That would be the position of the government, Your Honor. So let me ask you this. Do you think, do you have to die in that ditch? Because the way I thought I understood the precedent was that we've got sort of a two-step test here and the first question is legislative intent. And then the second question, if the legislative intent isn't quite clear, then you do Blockberger. So I would have thought instead of dying in the ditch of the, hey, it's got to be for plain error purposes, it's got to be these specific statutes, you would say, never mind all that. What we don't have is any kind of precedent that resolves the legislative intent question. And I would agree with your analysis that you, in order to then determine whether or not there's plain error, you do indeed look at the legislative intent and then you transition into the Blockberger analysis. And so, I mean, it might well be on the de novo reading of the legislature's intent, so far as we can divine it, that there really isn't much of an intent here to specify separate punishments. But on plain error, it might also be that if, you know, that if we don't have a case sort of resolving that question already, then the plain error standard defeats the claim. And I would agree with that. I just wanted to make sure that I sort of had your position right. Because I'm not sure you're right about the secondary position that our precedent necessarily requires an 11-11, 21-11 match case. If we've, you know, if we've got pretty analogous precedent here and from the Supreme Court and sort of on-point precedent from other circuits, that might be good enough. I tend to think the more problematic piece is at the first step with respect to legislative intent. And maybe we'll, I'll ask Mr. Lloyd the same question when he stands back up. Because I want him to have an opportunity to correct me if I'm wrong about that. Certainly.  All right. So let's, sometimes with these, at least for me, with some of these cases, the way to try to work through the plain error analysis is to find out whether or not even under de novo review there would be any error. And then see whether or not the ratcheted plain error standard has been met. So if you don't mind, humor me with this colloquy we're going to have in a second. Now, is the robbery a lesser included offense of the murder in this case on a de novo reading? As the case was indicted and as the jury was instructed, they were required to find the robbery had been committed, or there was a robbery. And all of the elements of the robbery were included in the murder charge. You are correct. Okay. So on de novo review, if there had been an objection, right, to the verdict, once the verdict came in, and Ms. Pinkin said, double jeopardy, you've got to throw, if you uphold the murder, the aiding and abetting the felony murder, you've got to throw out the aiding and abetting the robbery, and the district court had refused to do that, we should reverse. I would agree with that, Your Honor. Okay. Okay. Thank you. Okay. Back to the sufficiency, I think the direct evidence is more than enough in this case. The court does not have any other questions. The government will rest on its brief. All right. Thank you very much, Mr. Cross. Your Honor, to start with the question, with the double jeopardy issue that Your Honor mentioned about the legislative intent, we would argue, Ms. Pinkins would argue, that there is no clear legislative intent for the court to have the ability to punish for the greater offense and the lesser included offense in this situation. So here's my thing. I think you might be right about that on a de novo understanding. Like so far as I understand the legislative intent, I kind of agree with you. Like I can't tease out of the evidence that I've got a specific intent to authorize multiple punishments, but because we're on plain error and we, like our precedent about plain error does require, you know, sort of either a statute or a rule or a case on point effectively, I don't think we've got a case that says, hey, the legislative intent isn't clear. So does that, this was my question really, does that hang you up on plain error review? I don't believe so, Your Honor, because we're relying here on both Harris v. Oklahoma and the Blackburger test as kind of the central question that we're saying is clearly established federal law here that is plain error, that this error is plain under. I think the absence of any sort of legislative intent or any sort of legislative explanation as to why this wouldn't violate double jeopardy or why Ms. Pinkins could be punished for both of these offenses, I think it speaks to this court needing to just simply analyze this under Blackburger and Harris and looking at this without kind of the legislative question in mind. I would argue that the absence of anything from the legislature would show that we move on to the constitutional questions and the typical constitutional analysis. But why would, if a double jeopardy claim is like a two-pronged thing, right? The double jeopardy claim requires us to ask two questions. Was there a legislative intent? If not, do Blackburger? Why wouldn't the plain error analysis apply to all of that thing? It sounds like you want to say we're going to do legislative intent de novo and if there's no legislative intent, never go to Blackburger and now I'll deal with plain error and I think I can win it. Well, I guess Ms. Pinkins would argue that this would kind of lead to a strange result where the legislature, the Congress hasn't spoken to many offenses not violating double jeopardy and there's, you know, a lot of absence in the federal criminal law as to that issue. But there are certainly, you know, a myriad of instances where we could find a greater offense and a lesser included and it would kind of bring up a strange situation that because Congress hasn't spoken to this, this court could never take a look at what it appears to be a fairly obvious constitutional violation. So I would say that I don't think this court should be troubled under plain error review that there isn't a decision on the legislative intent or there isn't anything in the organic law that speaks to this. I think that the absence itself somewhat speaks for itself that this court can move on to the constitutional analysis under Harris and Blackburger. I'm sympathetic to your legal arguments and I think you have a chance of getting by plain error on the legal issues. But I think you may have a problem with the third prong of plain error which is substantial rights being affected because unlike the murder charge which dealt with the murder victim, the robbery charge as Mr. Cross pointed out, there were two victims. Now the verdict form didn't specify who the victim was with regards to the robbery counts but maybe it didn't have to if you're here on plain error review and it's pretty clear from the evidence the jury could have found that there were two robbery victims and one murder victim. How were her substantial rights affected? Well, I think that in comparing count one and count three, the language with the instructions was not tied as to the robbery for a specific victim of the robbery. Again, the jury instruction was offered as an or in the alternative and the instruction for the felony murder count was written the same way so there was no special finding that we found that Sanjay's death occurred during the robbery of Sanjay or Ms. Paulus just like the robbery wasn't determined to be of Mr. Sanjay or Ms. Paulus. And we think that that problem shouldn't matter too much in the eyes of this court. It would bleed to an absurd result that the court could say that the jury didn't believe that either were robbed or both or that only one was robbed but one was not. So with that, let's rest. Thank you. All right. Thank you both very much.